UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | |
| BYRON ROBINS ET AL. | NO.: 18-83-BAJ-EWD |

## RULING AND ORDER

Before the Court are the **Motions (Docs. 189, 191, 206)** of Roderick Harris, Tremayne Dabney, and Zion Hurst to suppress evidence derived from a traffic stop for an alleged license-plate light violation. For the reasons that follow, the **Motions (Docs. 189, 191, 206)** are **GRANTED**.

I.  BACKGROUND

The Fourth Amendment commands that no person be searched or seized when there is no basis to believe him guilty of a crime. The command "is categorical and without exception; it lies at the very heart of the Fourth Amendment." *Maryland v. King*, 569 U.S. 435, 466 (2013) (Scalia, J., dissenting). The Court finds that an officer of the Baton Rouge Police Department violated that command when he made a traffic stop without the reasonable suspicion required to support it.

This drug-conspiracy case arises from the activities of the FreeBandz organization in Baton Rouge, Louisiana. (Doc. 1). A grand jury returned a 68-count indictment charging 21 FreeBandz associates—including Harris, Dabney, and Hurst—with drug- and gun-related crimes. (*Id.*). Some of the evidence against Harris, Dabney, and Hurst derives from a traffic stop. (*Id.* at ¶¶ 59–61).

The stop occurred on December 6, 2017. (Doc. 331 at pp. 16–19). That night, Officer[1] Damien Collins was patrolling "Dixie," a "high-crime area" in north Baton Rouge. (*Id.* at p. 17). Officer Collins was part of the Baton Rouge Police Department's Street Crime Unit, which patrols "high-crime areas and contact[s] as many people as possible." (*Id.* at p. 162).

Around 9:15 P.M., Officer Collins pulled "directly behind" a white Toyota Camry. (*Id.* at p. 19). Harris was driving the Camry, Dabney was in the front passenger seat, and Hurst was in one of the back seats. (*Id.* at p. 8). Officer Collins activated his lights to initiate a traffic stop because, he later explained, the Camry's rear license plate was "unreadable."[2] (*Id.* at pp. 19, 27). But the Camry did not stop immediately; it "slow rolled" for a few blocks.[3] (*Id.* at pp. 27, 29).

---

[1] The Court uses the titles the officers held on the night of the stop. From the suppression hearing, the Court understands that Damien Collins, Joshua Barnett, and James Thomas are now corporals.

[2] Officer Collins did not tell anyone on the scene the reason for the stop. (Doc. 331 at p. 62).

[3] Officer Collins testified that "slow rolling" means that a car "continues to drive for several blocks[,] passing opportunities to stop." (Doc. 331 at p. 27). He testified that he becomes more suspicious when a car is "slow rolling" because, in his experience, cars "slow roll" when the occupants are "hiding something" or "looking for a place to get out and run." (*Id.* at p. 28).

By the time the Camry came to a stop, several officers had joined Officer Collins.[4] (*Id.* at p. 29). One of the first, Officer Joshua Barnett, pulled up to the driver side of the Camry. (*Id.*). Officer Collins pulled up to the passenger side. (*Id.*). Dabney immediately exited, and Officer Collins noticed a gun in his waistband. (*Id.* at p. 30). Officer Collins ordered Dabney to "keep his hands up," took Dabney's gun, and asked Dabney if he had identification. (*Id.*). When Dabney replied that he did not, Officer Collins placed him in the back of a cruiser. (*Id.* at p. 32).

Meanwhile, on the driver side, Officer Barnett ordered Harris to exit and to place his hands on the roof of the car. (*Id.* at p. 119). Officer Barnett then handcuffed Harris "for safety reasons" and placed Harris in the back of his cruiser. (*Id.* at pp. 122, 127).

Around the same time, Officer James Thomas found ecstasy pills on the floor around the front passenger seat. (*Id.* at p. 223). Officer Brad Ford then found drugs on Hurst's person and a gun[5] on the floor of the back seat. (*Id.* at p. 43).

After securing Dabney, Harris, and Hurst, the officers began to search the Camry. (*Id.* at p. 237). They found about 6,000 ecstasy pills in bags lodged beneath the center console. (*Id.* at p. 179). They did not obtain a warrant. (*Id.* at p. 9).

---

[4] The interactions that follow are documented, in part, by body-camera videos. *See* United States Hearing Exhibits 1–6. Unfortunately, the videos do not capture the audio for the entire encounter; the officers turned off the audio function after they secured Harris, Dabney, and Hurst. (Doc. 331 at p. 60).

[5] Officers later learned that the gun was stolen. (Doc. 331 at p. 56).

3

Upon returning to the station, Officer Collins interviewed Dabney, Harris, and Hurst.[6] (*Id.* at pp. 55–56). Dabney admitted possessing the pills that Officer Thomas found on the floor around the front passenger seat. (*Id.* at p. 55). Dabney denied, however, knowledge of the pills under the center console. (*Id.* at p. 56). Harris said he had no knowledge of any of the pills. (*Id.* at p. 55). Hurst admitting possessing the stolen gun but denied knowledge of the pills. (Doc. 206-2 at p. 35).

After interviewing Dabney, Harris, and Hurst, Officer Collins drafted a report that described the stop as follows:

> On December 06, 2017 at 2115 hrs I officer D Collins was patrolling on Weller ave when I observed a white Toyota Camry without a rear license plate light out making the plate unreadable. The ensuing traffic stop led to Tremayne DABNEY, Roderick HARRIS and Zion HURST being arrested for the above listed charges.

(Doc. 206-2 at p. 34).

Dabney, Harris, and Hurst move to suppress evidence derived from the stop because Officer Collins lacked the reasonable suspicion required to justify it.[7] (Docs. 189, 191, 206). The United States opposes. (Docs. 304, 346). It argues that Officer Collins had reasonable suspicion to believe that the Camry violated a Louisiana law governing the legibility of license plates. (Doc. 346 at p. 3) (citing LA. R.S 32:304(C)).

---

[6] Officer Collins testified that there are no recordings of the interviews. (Doc. 331 at p. 60).

[7] Harris, Dabney, and Hurst also challenge the warrantless search of the Camry. (189-1, 191-1, 206-1). Separately, Hurst challenges Officer Ford's seizure of a pill bottle (containing hydrocodone pills) from the pocket of his pants during a *Terry* frisk. (Doc. 206-1). The United States failed to address the argument. (Docs. 304, 346).

4

The Court reviewed the briefs and decided that it needed to receive evidence on issues of fact. *See United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). So the Court held an evidentiary hearing. (Doc. 317). Sergeant David Kennedy, Officer James Thomas, Officer Damien Collins, and Officer Joshua Barnett testified for the United States. (Doc. 331 at pp. 1–258). The Court ordered the parties to file post-hearing briefs, and they complied. (Docs. 345, 346, 347, 348).

II.  **LEGAL STANDARD**

"Generally, on a motion to suppress, the defendant has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). But "[w]hen the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional." *Id.* at 432. Because the officers searched and seized Harris, Dabney, and Hurst without warrants, the United States must prove, by a preponderance of the evidence, that the searches and seizures were constitutional. *See Guerrero-Barajas*, 240 F.3d 432.

## III. DISCUSSION

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[8] A traffic stop is a "seizure." *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014). To qualify as "reasonable" one, the stop must be supported by reasonable suspicion—a "particularized and objective basis for suspecting the particular person stopped of breaking the law." *Id.* at 536.

"Subjective intentions play no role" in the analysis. *Whren v. United States*, 517 U.S. 806, 813 (1996). So a "stop or search that is objectively reasonable is not vitiated by the fact that the officer's real reason for making the stop or search has nothing to do with the validating reason." *Florida v. Jardines*, 569 U.S. 1, 10 (2013).

The United States argues that Officer Collins had reasonable suspicion to believe that the Camry violated a Louisiana law governing the illumination of rear license plates.[9] *See* LA. R.S. 32:304(C). The law provides as follows:

> Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear. Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.

---

[8] Of course, the Fourteenth Amendment "extends this constitutional guarantee to searches and seizures by state officers." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995) (citing *Elkins v. United States*, 364 U.S. 206, 213 (1960)).

[9] In a footnote in its post-hearing brief, the United States argues—for the first time—that Officer Collins may have committed a "mistake of fact" that does not "vitiate" his reasonable suspicion. (Doc. 346 at p. 5, n.4). The Court disregards the argument because it is undeveloped and based on non-binding decisions. *See Bridas S.A.P.I.C. v. Gov. of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003).

6

LA. R.S. 32:304(C).[10]

The parties agree that the law requires only one rear license-plate light, and that one of the Camry's rear license-plate lights was illuminated. (Docs. 345, 346, 347, 348). They disagree, however, about whether that single rear license-plate light "render[ed]" the rear license plate of the Camry "clearly legible from a distance of fifty feet to the rear." (*Id.*).

Unfortunately, no officer made any effort to document the alleged license-plate light violation. (Doc. 331 at p. 65). No officer took a photograph of the rear license plate from 50 feet away. (*Id.*). No officer produced video showing Officer Collins's view of the rear license plate as he initiated the stop. (*Id.* at pp. 1–258).[11] In short: no officer bothered to ensure that the legal justification for the stop was "objectively grounded." *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998) (citing *Whren*, 517 U.S. at 812–14). Given these evidentiary shortcomings, the Court's ruling is informed by (1) Officer Collins's testimony about the readability of the Camry's rear license plate and (2) post-stop photographs of the rear license plate, extracted from body-camera footage.[12]

---

[10] In response to the Court's questioning, Officer Collins testified that he stops motorists for LA. R.S. 32:304(C) violations several times a week. (Doc. 331 at p. 99). The United States made no effort to corroborate the testimony.

[11] Officer Collins testified that his dashboard camera was "not functioning" at the time and that the Baton Rouge Police Department decided not to fix the "old" dashboard cameras as they transitioned to a newer system. (Doc. 331 at pp. 62–63).

[12] The Court has considered Officer Collins's testimony about the Camry's "slow roll" in its reasonable-suspicion analysis. Because the Court concludes that Officer Collins's testimony lacks credibility, and no other officer testified that he witnessed the "slow roll," the "slow roll" cannot supply the reasonable suspicion required to justify the stop.

Although not of the highest quality, the photographs admitted into evidence during the suppression hearing indicate that the Camry's rear license plate was illuminated by one rear license-plate light.[13] (*See* Harris Exhibits 4, 8). Yet Officer Collins testified that the plate was "unreadable" from his perspective—one car length "directly behind" the Camry with headlights trained on the plate. (Doc. 331 at pp. 19, 72). The Court cannot credit this testimony. The admitted photographs show the rear license plate to be illuminated by one of two license-plate lights; the plate would not be "unreadable" from the perspective of the driver of a car travelling one car-length behind with its headlights activated.

The Court emphasizes what Officer Collins did and did not say. Had he said that the rear license plate was not "clearly legible" from 50 feet away, the Court would have credited the testimony. But that is not what he said. He testified that the plate was "unreadable" from his perspective, a mere car length "directly behind" the Camry with his headlights trained directly on the Camry's rear license plate, which was illuminated by one of two license-plate lights. (Doc. 331 at pp. 19, 72). That is simply unbelievable, given what is depicted in the photographs.

The Court does not credit Officer Collins's testimony about his reasonable suspicion for believing that the Camry violated LA. R.S. 32:304(C). Besides that incredible testimony, the United States offers no evidence justifying the stop—no evidence, importantly, that "the circumstances, viewed objectively, justif[ied]" the stop. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). The Court therefore finds that

---

[13] No one knows the distance from which the photographs were taken.

8

the United States has not met its burden of proving, by a preponderance of the evidence, that the traffic stop was constitutional. *See Guerrero-Barajas*, 240 F.3d 432.

* * *

The suppression hearing provided the United States the "opportunity and obligation to present evidence establishing the validity of the stop." *United States v. Raney*, 633 F.3d 385, 392 (5th Cir. 2011) (per curiam). It failed to do so. The Court therefore suppresses all evidence derived from the stop. *See United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motions to Suppress (Docs. 189, 191, 206) are GRANTED**.

Baton Rouge, Louisiana, this ＿6th＿ day of June, 2019.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**